Filed 9/23/25  P. v. Hernandez CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SAMANTHA HERNANDEZ,<br><br>Defendant and Appellant. | B338797<br><br>(Los Angeles County<br> Super. Ct. No. BA442339) |

APPEAL from an order of the Superior Court of Los Angeles County.  Lisa B. Lench, Judge.  Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Samantha Hernandez appeals from the trial court's order denying, at the prima facie stage, her petition for resentencing under Penal Code section 1172.6 (former section 1170.95).[1] We reverse and remand with directions to issue an order to show cause and hold further proceedings in accordance with section 1172.6, subdivision (d).

## FACTUAL AND PROCEDURAL SUMMARY

On September 10, 2015, victim Jacob Guillen, a Florencia 13 gang member, was found dead in Lafayette Park—an area claimed as territory by the Mara Salvatrucha (MS-13) gang, a rival of Florencia 13. Guillen sustained 18 stab wounds to his neck and upper left arm.

Defendant was subsequently charged, along with two codefendants, with the murder of Guillen (§ 187, subd. (a).) Defendant was alleged to have personally used a knife in committing the murder (§ 12022, subd. (b)(1)) and the murder was alleged to have been committed for the benefit of a gang within the meaning of section 186.22, subdivision (b). In the same felony complaint that alleged 22 counts against 10 individuals, defendant was also charged with conspiracy to commit another murder (§ 182, subd. (a)(1)) on a different date and with the sale or transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)), both of which were alleged to have been gang-related.

Testimony at the preliminary hearing demonstrated the following facts. Detective Wes Lin of the Los Angeles Police Department (LAPD) obtained video footage for September 10, 2015, from a security camera located at the Lafayette Park Recreation Center. He testified the video showed two males and a female

---

[1] All undesignated statutory references are to the Penal Code.

sitting on a park bench. They eventually get up and confront another male (later determined to be Guillen) who was walking through the park alone. The video showed them either punching or stabbing Guillen while he attempted to run away. The precise nature of the attack could not be determined from the video alone. Additional footage showed Guillen lying on the ground, the two males running from the park, and the female fleeing on a bicycle.

Detective Frank Flores recounted his conversation, two weeks after the Guillen murder, with a confidential informant who was providing information to the LAPD in a then-pending wiretap investigation of the MS-13 gang. The informant reported having a conversation with defendant, also known by her gang moniker Peligrosa, who admitted stabbing someone in Lafayette Park on September 10, 2015 ("they had taken out an enemy"). During the conversation, defendant also said she had received a knife from Anibal Jose Hernandez, another MS-13 gang member, and had stabbed Guillen with it. A day later, Anibal Jose Hernandez warned the informant not to say anything about what she and defendant had told him. The informant identified both defendant and Anibal Jose Hernandez in two separate photographic six-pack lineups.

Detective Carlos Camacho, who was also involved in the MS-13 investigation, testified about an interview he had with the same informant five days after the Guillen murder. The informant reported riding in a car with defendant and another gang member known as Demon Killer sometime on September 14, 2015. While defendant and Demon Killer discussed someone being killed, defendant said she was "surprised how fast the person went down." The informant identified defendant from photographs.

On June 27, 2018, defendant pled no contest to second degree murder and admitted the personal knife use allegation. Defendant

also pled no contest to the drug offense and admitted it was gang-related.  Defendant was sentenced to a term of 15 years to life for the murder, plus a consecutive one-year enhancement for the knife use, and a consecutive four-year upper term on the drug offense.  A four-year gang enhancement was imposed and stayed.  Defendant was awarded 987 actual days of presentence custody credits.

Shortly after defendant's judgment became final, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.) which amended and narrowed the law regarding liability for murder and enacted section 1172.6.  Section 1172.6 provides a procedural mechanism for individuals, convicted under a murder theory that is no longer viable in light of the statutory amendments, to petition for sentencing relief.

On July 13, 2023, defendant filed a preprinted form petition under section 1172.6 and requested the appointment of counsel.  The trial court deemed defendant's petition facially sufficient and appointed counsel.  The parties filed briefing, and the court set a hearing for June 13, 2024 to assess whether defendant had demonstrated a prima facie case for relief.  At the hearing, the court denied defendant's petition, reasoning defendant admitted "she personally used a knife" in the commission of the murder and the record of conviction demonstrated she was the "actual killer" and therefore ineligible as a matter of law.

This appeal followed.

## DISCUSSION

"[R]esentencing under section 1172.6 involves three stages.  It begins with a facially valid petition that entitles petitioner to counsel, continues with asking whether petitioner has made a prima facie case for relief, and, if so, proceeds to an evidentiary hearing on the ultimate question of whether petitioner should be resentenced." (*People v. Patton* (2025) 17 Cal.5th 549, 562 (*Patton*).)

4

Defendant contends the record of conviction does not support the denial of her petition at stage two. She says she pled no contest to second degree murder under *People v. West* (1970) 3 Cal.3d 595. (*In re Alvernaz* (1992) 2 Cal.4th 924, 932 [a *West* plea is a "a plea of nolo contendere, not admitting a factual basis for the plea"].) In addition, she argues that even if the transcripts of the preliminary hearing are considered, the testimony was at best ambiguous. There was no testimony from a percipient witness to the stabbing, and the video footage shows there were at least two people involved in the assault on the victim. Defendant contends the identity of the actual killer "remains an unresolved factual issue" and warrants the issuance of an order to show cause and an evidentiary hearing.

"We review de novo a trial court's prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law." (*People v. Allen* (2023) 97 Cal.App.5th 389, 395.) Based on our review of the record, we conclude the trial court erred in denying defendant's petition at the prima facie stage.

Just this year, in *Patton*, *supra*, 17 Cal.5th 549, the Supreme Court clarified the trial court's role at the prima facie stage. *Patton* emphasized that the prima facie inquiry is not merely duplicative of the facial inquiry. (*Id.* at p. 562.) Rather, the trial court, accepting the petitioner's factual allegations as true " ' " 'makes a preliminary assessment regarding whether the petitioner would be entitled to relief if [those] factual allegations were proved.' " ' " (*Id.* at p. 563.) *Patton* acknowledged the trial court's inquiry at the prima facie stage is limited and does not include factfinding involving the weighing of evidence. (*Ibid.*)

But *Patton* also reaffirmed *People v. Lewis* (2021) 11 Cal.5th 952, 971, in which the Court concluded the prima facie inquiry under section 1172.6 is " 'analogous' to the prima facie inquiry in habeas corpus proceedings." (*Patton*, *supra*, 17 Cal.5th at p. 563.)

Just like a habeas petitioner, a petitioner in a section 1172.6 proceeding must " 'make[] a prima facie showing' (§ 1172.6, subd. (c)) to frame a disputed issue that entitles that petitioner to an evidentiary hearing.  [Fn. omitted.]" (*Patton*, at p. 566.)

Moreover, *Patton* resolved an issue that had created a split of authority in the appellate courts.  *Patton* concluded that a trial court does not engage in impermissible factfinding if it considers unchallenged facts from a preliminary hearing transcript that demonstrate relief under section 1172.6 is unavailable.  (*Patton*, *supra*, 17 Cal.5th at p. 564.)  "Where facts from the record of conviction are undisputed, accepting them over contrary legal allegations that are merely conclusory is not ' "factfinding involving the weighing of evidence or the exercise of discretion." ' " (*Id*. at pp. 565–566.)  The Court pointed again to the similarity of habeas proceedings, explaining that the particularity requirement imposed on habeas petitioners "helps courts identify 'material issues of disputed fact.'  [Citation.]  It does not impose 'technicalities; it simply demands of [the petitioner] a measure of frankness in disclosing [the relevant] factual situation' supporting relief." (*Id*. at pp. 564–565.)

Thus, preliminary hearing transcripts may play an important role at the prima facie stage in section 1172.6 proceedings in framing the relevant factual issues for the court.  "To the extent Courts of Appeal have conditioned use of preliminary hearing transcripts at the prima facie stage on whether a defendant, when pleading guilty, stipulated to the transcript or its contents, they have overlooked the issue-framing role a transcript can play at the prima facie stage of the resentencing process.  [Citations.]  [Fn. omitted.]  The absence of such a stipulation during an earlier plea colloquy does not eliminate this role." (*Patton*, *supra*, 17 Cal.5th at p. 569.)

6

Nevertheless, *Patton* cautions that trial courts may not resolve material factual disputes "at the prima facie stage." (*Patton, supra,* 17 Cal.5th at p. 567.) Uncontradicted facts in preliminary hearing transcripts are considered for purposes of issue-framing only. Where factual disputes exist, the trial court must issue an order to show cause and hold an evidentiary hearing. (*Ibid.*) *Patton* posited that a "dispute regarding the basis of a conviction might arise if, for instance, a petitioner points to specific facts that identify someone else as the direct perpetrator." (*Ibid.*)

The preliminary hearing testimony here shows that three people initially set upon the victim and that at least two individuals can be seen either punching or stabbing the victim. There was no other evidence that otherwise demonstrated what defendant's actual role was in the death of Guillen, or what her mental state was in participating in the attack that eventually led to his death. Unlike *Patton*, this is not a case where the record shows the petitioning defendant was the sole perpetrator. The other codefendants here were charged with the murder and were not simply "conjured from thin air" by defendant after the fact in an attempt to obtain sentencing relief. (*Patton*, *supra*, 17 Cal.5th at p. 567.)

Furthermore, defendant's admissions at the plea colloquy do not establish she was the actual killer or acted with intent to kill as a direct aider and abettor, nor do they demonstrate she is ineligible for relief as a matter of law.

Defendant and her two codefendants were charged generically with the crime of murder. The information alleged that defendants "did unlawfully, and with malice aforethought murder" Guillen. In entering her plea to the charge, defendant did not admit to harboring express malice or an intent to kill. Rather, the record shows she pled no contest to second degree murder as charged in

7

the information and did not admit to any facts.  Second degree murder can be based on implied malice which does not require a specific intent to kill.  (*People v. Knoller* (2007) 41 Cal.4th 139, 151; § 188, subd. (a); see also *People v. Rivera* (2021) 62 Cal.App.5th 217, 233 [generic charge of murder did not preclude prosecution based on any particular theory].)

Defendant's bare admission of the knife use allegation under section 12022 also does not establish she acted with intent to kill or that she was the actual killer.  "As with pleading guilty to a criminal offense, a plea or admission of a sentencing enhancement is likewise deemed a judicial admission of only elemental facts necessary to the enhancement."  (*People v. Estrada* (2024) 101 Cal.App.5th 328, 338.)  The enhancement under section 12022 requires "only a general intent to use a deadly weapon or inflict bodily injury."  (*Estrada*, at p. 338.)

The record of conviction does not contain undisputed facts demonstrating that defendant is ineligible for relief as a matter of law.  The trial court should have issued an order to show cause and conducted further proceedings under section 1172.6, subdivision (d).  We express no opinion on the merits of defendant's petition.

## DISPOSITION

The order denying defendant and appellant Samantha Hernandez's petition for resentencing is reversed. The case is remanded to the superior court with directions to issue an order to show cause and hold an evidentiary hearing under Penal Code section 1172.6, subdivision (d).


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


RUBIN, J.*

_____

\*      Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9